**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MORAD DALIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>700 CREDIT, LLC,<br><br>Defendant. | Case No. ________________<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Morad Dalia ("Plaintiff"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through his attorneys, brings this Class Action Complaint against Defendant 700 Credit, LLC ("700 Credit" or "Defendant"), and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiff brings this class action against Defendant for its failure to secure and safeguard approximately 5,836,521 individuals' (including Plaintiff's) personally identifying information ("PII") including names, addresses, dates of birth, and Social Security numbers.

2. 700 Credit is a provider of credit reports, soft pull credit data, identity verification, fraud detection, and compliance solutions for automotive and powersport vehicle dealerships.

3. On or about October 25, 2025, 700 Credit discovered that an unauthorized third party gained access to 700 Credit's network systems and accessed and acquired files containing the PII of customers of 700 Credit's dealership clients, including Plaintiff and Class members (the "Data Breach").

4. Defendant owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Defendant breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect Plaintiff's and Class members' PII from unauthorized access and disclosure.

5. As a result of Defendant's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of himself and all persons whose PII was exposed as a result of the Data Breach, which occurred on or about October 25, 2025.

6. Plaintiff, on behalf of himself and all other Class members, asserts claims for negligence, negligence per se, unjust enrichment, and violation of the Fair Credit Reporting Act, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

***Plaintiff Morad Dalia***

7. Plaintiff is a citizen and resident of New Jersey.

8. Plaintiff purchased a car in July 2025 from a dealership that contracted with 700 Credit for credit check or similar services. In connection with obtaining such services from 700 Credit, the dealership provided Plaintiff's PII to 700 Credit.

9. At all relevant times, 700 Credit stored and maintained Plaintiff's PII on its network systems, including the systems impacted in the Data Breach.

10. Plaintiff received a notice letter from 700 Credit notifying him that his PII, including his name, address, date of birth, and Social Security number, was in the files accessed and acquired by an unauthorized third party in the Data Breach.

11. As a result of the Data Breach, Plaintiff's credit score dropped over 100 points. Plaintiff's bank has placed restrictions on his account and transactions due to potential signs of fraud or identity theft. Plaintiff believes this is a result of criminals obtaining and misusing his PII from the Data Breach.

12. Plaintiff experienced a large increase in the number of spam calls, texts, and emails he receives as a result of the Data Breach.

13. As a direct result of the Data Breach, Plaintiff has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of his highly sensitive PII; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of his PII.

***Defendant 700 Credit, LLC***

14. Defendant 700 Credit, LLC is a Delaware company with its principal place of business located at 26555 Northwestern Highway, Suite 301, Southfield, MI 48033. It may be served through its registered agent: CSC Lawyers Incorporating Service Company, located at 3410 Belle Chase Way, Suite 600, Lansing, MI 48911.

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

16. This Court has personal jurisdiction over Defendant because it transacts business within this State and maintains its principal place of business in this District.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## **FACTUAL ALLEGATIONS**

### ***Overview of 700 Credit***

18. 700 Credit "is the largest provider of credit reports, soft pull credit data, identity verification, fraud detection and compliance solutions in Automotive, RV, Powersports and Marine dealerships across the U.S."[1]

19. In the regular course of its business, 700 Credit collects and maintains the PII of the customers of its dealership clients, including Plaintiff and Class members. 700 Credit requires its dealership clients to provide it with their customers' PII, including the information stolen in the Data Breach, before it provides them credit checking or related services.

---

[1] *About Us*, 700CREDIT, https://www.700credit.com/about/ (last accessed Dec. 30, 2025).

20. Plaintiff and Class members are, or were, customers of 700 Credit's dealership clients, and 700 Credit stored Plaintiff's and Class members' PII on its network systems.

***The Data Breach***

21. On or about October 25, 2025, 700 Credit discovered that an unauthorized third party gained access to its network systems and acquired files containing the PII of Plaintiff and Class members, including their names, addresses, dates of birth, and Social Security numbers. [2]

22. Despite discovering the Data Breach on or about October 25, 2025, 700 Credit waited until approximately December 22, 2025—nearly two months after discovering the Data Breach—to announce the Data Breach and begin notifying Plaintiff and Class members that their PII was accessed and acquired by unauthorized persons.[3]

23. Defendant's failure to promptly notify Plaintiff and Class members that their PII was disclosed, accessed, and stolen virtually ensured that the unauthorized third parties who exploited those security lapses could monetize, misuse, or disseminate that PII before Plaintiff and Class members could take affirmative steps

---

[2] 700 Credit, *Data Breach Notification*, ME. ATT'Y GEN. (Dec. 12, 2025), https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/d546001c-f4d5-4c31-8b0e-c28e80d3b35f.html.
[3] *See id.*

to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

***Defendant Knew that Criminals Target PII***

24. At all relevant times, Defendant knew, or should have known, that the PII that it collects and stores was a target for malicious actors. Despite such knowledge, Defendant failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII from unauthorized disclosures and cyberattacks that it should have anticipated and guarded against.

25. It is well known among companies that store sensitive personally identifying information that such information—such as the PII stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[4]

[4] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

26. PII is a valuable property right.[5] The value of PII as a commodity is measurable.[6] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[7] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[8] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

27. As a result of the real and significant value of these data, identity thieves and other cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various internet websites making the information publicly available. This information from various

---

[5] *See* Marc van Lieshout, *The Value of Personal Data*, 457 Int'l Fed'n for Info. Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . ."), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[6] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[7] Organization for Economic Co-operation and Development, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[8] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

breaches, including the information exposed in the Data Breach, can be readily aggregated with other such data and become more valuable to thieves and more damaging to victims.

28. Consumers place a high value on the privacy of their data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[9]

29. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

[9] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

***Theft of PII Has Grave and Lasting Consequences for Victims***

30. Theft of PII can have serious consequences for the victim. The FTC warns consumers that identity thieves use PII to receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[10] [11]

31. Experian, one of the largest credit reporting companies in the world, warns consumers that "[i]dentity thieves can profit off your personal information" by, among other things, selling the information, taking over accounts, using accounts without permission, applying for new accounts, obtaining medical procedures, filing a tax return, and applying for government benefits.[12]

32. Identity theft is not an easy problem to solve. In a 2025 survey, the Identity Theft Resource Center found that 20% of victims of identity misuse needed

[10] *See* Federal Trade Commission, *What to Know About Identity Theft*, FTC CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Dec. 30, 2025).

[11] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[12] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

more than 30 days to resolve issues stemming from identity theft and 13% required three months or more.[13]

33. There may also be time lags between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. On average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[14]

34. It is within this context that Plaintiff and all other Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by someone intending to use that information for any number of improper purposes and scams, including making the information available for sale on the black-market.

***Damages Sustained by Plaintiff and Class Members***

35. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the disclosure, compromise, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from

---

[13] Identity Theft Resource Center, *2025 Consumer Impact Report*, IDENTITY THEFT RES. CTR. (2025), https://www.idtheftcenter.org/publication/itrc-2025-consumer-impact-report/ (last accessed Dec. 30, 2025).

[14] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach.

## CLASS ALLEGATIONS

36. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

37. Plaintiff brings this action on behalf of himself and all members of the following Class of similarly situated persons:

> All persons whose PII was accessed in the Data Breach by unauthorized persons, including all who were sent a notice of the Data Breach.

38. Excluded from the Class are 700 Credit, LLC and its affiliates, parents, subsidiaries, employees, officers, agents, board members, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge.

39. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

40. The members in the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. 700 Credit has reported to the Maine Attorney General that approximately 5,836,521 individuals were affected by the Data Breach.[15]

41. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

a. whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII from unauthorized access and disclosure;

b. whether Defendant had duties not to disclose the PII of Plaintiff and Class members to unauthorized third parties;

c. whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII;

d. whether Defendant breached its duties to protect Plaintiff's and Class members' PII; and

e. whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

42. 700 Credit engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and all other

[15] 700 Credit, *Data Breach Notification*, *supra* n.2.

Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

43. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by 700 Credit, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

44. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

45. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct. Even if Class members could

afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

46. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

47. 700 Credit owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting the PII in its possession, custody, or control.

48. 700 Credit knew or should have known the risks of collecting and storing Plaintiff's and all other Class members' PII and the importance of maintaining secure systems. 700 Credit knew or should have known of the many data breaches that targeted entities that collect and store PII in recent years.

49. Given the nature of 700 Credit's business, the sensitivity and value of the PII it collects, stores, and maintains, and the resources at its disposal, 700 Credit should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

50. 700 Credit breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.

51. It was reasonably foreseeable to 700 Credit that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

52. But for 700 Credit's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

53. As a result of 700 Credit's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity

theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in 700 Credit's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach.

## COUNT II
## NEGLIGENCE PER SE

54. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

55. 700 Credit's duties arise from, *inter alia*, Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as 700 Credit, of failing to employ reasonable measures to protect and secure PII.

56. 700 Credit violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and other Class members' PII, by failing to provide timely notice, and by not complying with applicable industry standards. 700 Credit's conduct was particularly unreasonable given the nature

and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and the other Class members.

57. 700 Credit's violation of Section 5 of the FTCA constitutes negligence per se.

58. Plaintiff and Class members are within the class of persons that Section 5 of the FTCA was intended to protect.

59. The harm occurring as a result of the Data Breach is the type of harm that Section 5 of the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and Class members as a result of the Data Breach.

60. It was reasonably foreseeable to 700 Credit that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

61. The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of 700 Credit's violations of Section 5 of the FTCA. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in 700 Credit's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach.

**COUNT III**
**UNJUST ENRICHMENT**

62. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

63. Plaintiff and Class members conferred a monetary benefit upon 700 Credit in the form of money paid to their dealerships, which the dealerships in turn used to pay for services from 700 Credit, and through the provision of their PII, which was also necessary for 700 Credit to provide its services. Plaintiff did so with

an implicit understanding that some of these payments would go towards protecting Plaintiff's PII.

64. 700 Credit accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class members. 700 Credit benefitted from the receipt of Plaintiff's and Class members' PII, as this was used to provide credit checks or related services.

65. As a result of 700 Credit's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that they paid for and expected, and those payments without reasonable data privacy and security practices and procedures that they received.

66. 700 Credit should not be permitted to retain the money belonging to Plaintiff and Class members because 700 Credit failed to adequately implement the data privacy and security procedures for itself that Plaintiff and Class members expected and that were otherwise mandated by federal, state, and local laws and industry standards.

67. Plaintiff and Class members have no adequate remedy at law.

68. 700 Credit should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

**COUNT IV**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681 *et seq.* ("FCRA")**

69. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

70. One of the fundamental purposes of FCRA is to protect consumers' privacy. 15 U.S.C. § 1681(a)(4). Protecting consumers' privacy involves adopting reasonable procedures to keep sensitive information confidential. 15 U.S.C. § 1681(b).

71. FCRA defines a "consumer reporting agency" as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

72. FCRA defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under [15 U.S.C. § 1681b].

15 U.S.C. § 1681a(d)(1).

73. 700 Credit regularly assembles consumer information including, among other things, names, dates of birth, address, and Social Security Numbers. 700 Credit also regularly utilizes interstate commerce to furnish such information on consumers (consumer reports) to third parties.

74. The information that 700 Credit gathers, creates, and provides for its dealership clients are Credit Reports under FCRA.

75. FCRA requires that consumer reporting agencies "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e. 700 Credit failed to adopt and maintain these and other reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b.

76. 700 Credit's disclosure of Plaintiff's and Class members' PII to cybercriminals is not a purpose for which a consumer report can be furnished under 15 U.S.C. § 1681b.

77. 700 Credit's violations of FCRA, as set forth above, were willful or, at the very least, reckless, constituting willfulness. The many recent data breaches occurring to other companies put 700 Credit on notice that it needs to maintain adequate data security and that its data security was inadequate, yet it

still disclosed Plaintiff's and Class members' PII to cybercriminals through inadequate data security.

78. Alternatively, 700 Credit's violations of FCRA were negligent. 700 Credit negligently failed to adopt and maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b.

79. The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of 700 Credit's violations of FCRA. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach.

80. Plaintiff and Class members, therefore, are entitled to compensation for their actual damages or statutory damages of not less than $100, and not more

than $1,000, each, as well as attorneys' fees, punitive damages, litigation expenses, and costs, pursuant to 15 U.S.C. § 1681n(a).

81. Alternatively, Plaintiff and Class members are entitled to compensation for their actual damages, as well as attorneys' fees, litigation expenses, and costs, pursuant to 15 U.S.C. § 1681o.

**PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring

services and similar services to protect against all types of identity theft and medical identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: December 31, 2025

Respectfully submitted,

/s/ *E. Powell Miller*
Gregory A. Mitchell (P68723)
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive
Rochester, MI 48307
Tel: (248) 841-2200
gam@millerlawpc.com
epm@millerlawpc.com

Ben Barnow
Anthony L. Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312.621.2000

b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Counsel for Plaintiff*